```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                                   )
UNITED STATES OF AMERICA           )
                                   )
v.                                 )
                                   )   Criminal Action
MELVIN SMITH,                      )   No. 24-cr-10102-PBS
                                   )
              Defendant.           )
_____)
```

**MEMORANDUM AND ORDER**

May 7, 2025

Saris, D.J.

**INTRODUCTION**

Defendant Melvin Smith, charged with being a felon in possession, moves to suppress evidence obtained during the execution of a federal search warrant at his apartment. He argues that the search warrant was not supported by probable cause because the affidavit failed to establish a sufficient nexus between his apartment and the criminal activity under investigation and that the good-faith exception to the exclusionary rule does not apply. In the alternative, Smith requests a Franks hearing.

After a non-evidentiary hearing, the Court **DENIES** Smith's motion to suppress (Dkt. 49) and his motion for a Franks Hearing (Dkt. 53).

1

**BACKGROUND**

On February 13, 2024, Boston Police Department ("BPD") sought a search warrant for 42 Harrison Archway, Apartment 4262 in Boston, Massachusetts, relying on the affidavit of Detective Brian Ball. In his affidavit, Detective Ball, a detective with BPD for nearly a decade and a federal Task Force Officer, provided the following information.

**I.    Riley's Residence at the Harrison apartment**

Riley was arrested at the Harrison apartment on October 19, 2023. At that time, he identified the Harrison apartment as his residence to the arresting officers and directed them to his bedroom to retrieve specific clothing. The arresting officers observed Riley's clothing, personal possessions, and toiletries in the room. In addition, Riley reported to the Massachusetts Probation Department that he lived at the Harrison apartment in connection with his open criminal cases in state court. Location data from his GPS ankle bracelet was consistent with his residing there.

**II.   Riley's Gang Affiliation and Criminal History**

The affidavit described the Heath Street Gang as an association-in-fact enterprise engaged in a variety of crimes, including narcotics trafficking, financial fraud, and violent crimes. Detective Ball identified Riley as a member of the gang based on his Heath Street Gang tattoos, social media posts showing

2

Riley displaying Heath Street Gang signs in the company of other known gang members, and clothing adorned with gang symbolism. Detective Ball stated that, based on his training and experience, gang members commonly keep weapons and gang paraphernalia in their homes.

The affidavit also recounted Riley's criminal history and alleged involvement in gang-related crimes over the last two decades. Riley has prior convictions for armed robbery, firearms offenses, and manslaughter. Most recently, on October 19, 2023, Riley was arrested on federal firearm charges. During this arrest and subsequent booking process, Riley twice admitted to officers that he works for a company called "Married 2 the Mop," which investigators believed was a front used by the Heath Street Gang to commit wire fraud, money laundering, and pandemic unemployment fraud. Riley was released after his arraignment on the federal firearm charges and, since that time, has been the target of a narcotics investigation. In January 2024, a confidential informant conducted a controlled purchase of crack cocaine from him.

### III. Issuance and Execution of the Search Warrant

Based on this information, a federal magistrate judge issued a warrant to search the Harrison apartment for evidence of RICO conspiracy on February 13, 2024. In particular, the warrant authorized the seizure of, among other things:

2. Records and tangible objects pertaining to . . .

>    4. Heath Street Gang membership and/or association, including but not limited to gang-related photographs, images, or videos (such as group photos of gang members, other gang members/associates, gang-related graffiti, gang-related hand signs, guns or drugs possessed by the gang, stacks of money, or gang-related symbols); and
>
>    5. Heath Street Gang-related documents, such as gang-related notes, gang-related communications (including communications ordering gang activities or discussing the operation of the gang), gang-related greeting cards, gang-related birthday cards, gang-related memorial cards, lists of gang members/associates, gang-related drawings, and lists of rival gangs or gang members;
>
>    6. Heath Street Gang-related tangible items, such as gang-related clothing, gang-related memorial pins, and other items bearing gang symbols (such as weapons); and
>
>    7. Firearms possession, including firearms, firearms accessories, body armor, ammunition, and documents relating to the purchase and possession of such items . . .
>
>    5. Weapons, including firearms, brass knuckles, knives, razors, clubs and baseball bats and documents relating to the purchase and/or possession of such items . . .
>
>    7. Records and tangible objects relating to the ownership, occupancy, or use of the premises to be searched (such as utility bills, phone bills, rent payments, mortgage payments, photographs, insurance documentation, receipts and check registers).

Dkt. 49-2 at 40-42, 45.

State and federal law enforcement officers executed this warrant on February 14, 2024. When officers entered the Harrison apartment, Riley exited one bedroom, and Smith exited a second bedroom. In the room Smith exited, officers found various items,

including (1) a FEG Mod. SMC, .380 caliber semi-automatic pistol (with an obliterated serial number) which was loaded with six rounds of .380 caliber ammunition; (2) a box containing twenty-four rounds of .380 caliber ammunition; and (3) suspected controlled substances. Additionally, officers found evidence that suggested Smith was the occupant of that room, including mail in his name from the American Association of Retired Persons.

## DISCUSSION

### I. Probable Cause

#### A. Legal Standard

The Fourth Amendment mandates that warrants be based on probable cause. U.S. Const. amend. IV. Probable cause "is not a high bar" and demands "only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." United States v. Cortez, 108 F.4th 1, 8 (1st Cir. 2022) (cleaned up). Moreover, "an affidavit submitted to show probable cause need not point to some straight-line connection but, rather, may rely on the affiant's connecting of a series of dots in a commonsense way." United States v. Adams, 971 F.3d 22, 32 (1st Cir. 2020). To determine "whether a search warrant affidavit establishes probable cause," courts "consider . . . the totality of the circumstances based on the facts and supported opinions set out within the four corners of the affidavit." Cortez, 108 F.4th at 8 (cleaned up). Courts must also "give significant deference to the magistrate

judge's initial evaluation," disagreeing only if there is "no 'substantial basis' for concluding that probable cause existed." United States v. Chiu, 36 F.4th 294, 297 (1st Cir. 2022) (quoting United States v. Mendoza-Maisonet, 962 F.3d 1, 16 (1st Cir. 2020)).

The probable cause inquiry is two-fold: "[a]n application for a warrant must demonstrate probable cause to believe that (1) a crime has been committed -- the 'commission' element, and (2) enumerated evidence of the offense will be found at the place searched -- the so-called 'nexus' element." United States v. Gonzalez, 113 F.4th 140, 148 (1st Cir. 2024) (quoting United States v. Roman, 942 F.3d 43, 50 (1st Cir. 2019)). In other words, there must be "a '"fair probability" -- not certainty -- that evidence of a crime will be found in a particular location.'" Corleto, 56 F.4th at 175 (quoting United States v. Lindsey, 3 F.4th 32, 39 (1st Cir. 2021)). Satisfaction of the nexus element "can be 'inferred from the type of crime, the nature of the items sought, . . . and normal inferences as to where a criminal would hide [evidence of a crime].'" Id. (alterations in original) (quoting Lindsey, 3 F.4th at 39).

**B.  Application**

Smith argues that the warrant for the search of the Harrison apartment was issued in violation of the Fourth Amendment because

6

the affidavit failed to establish a nexus between the alleged RICO conspiracy and the Harrison apartment.[1]

Detective Ball's affidavit established ample probable cause that this nexus existed because Riley resided at the Harrison apartment. As stated, less than four months before the warrant issued, Riley told arresting officers that he lived at the Harrison apartment, he reported the Harrison apartment as his residence in connection with state court proceedings, and he wore a GPS ankle bracelet, the data from which corroborated his presence at the address.

The affidavit also established a sufficient nexus between the evidence sought and the Harrison apartment. The warrant sought items indicative of Riley's affiliation with the Heath Street Gang, including "gang-related greeting cards, gang-related birthday cards," "gang-related clothing," and "gang-related photographs." Dkt. 49-2 at 30, 41. Detective Ball explained that, based on his training and experience, individuals commonly store such items in their residences. That assertion is entitled to weight. See Adams, 971 F.3d at 32 ("[A] law enforcement officer's training and experience may yield insights that support a probable cause determination." (quoting United States v. Floyd, 740 F.3d 22, 35

---

[1] In his motion to suppress, Smith "acknowledges that some evidence was put forward" relating to the commission element, in particular, the "alleged offense conduct of RICO conspiracy in January 2024 by Riley." Dkt. 50 at 7.

7

(1st Cir. 2014))). Because there is probable cause to believe that Riley is a member of the Heath Street Gang, that he lived at the Harrison apartment, and that he kept evidence of his gang affiliation, the nexus requirement is satisfied.

**II.   Franks Hearing**

   **A.   Legal Standard**

Smith requests a Franks hearing in his motion to suppress. An affidavit in support of probable cause is presumed valid. See Franks v. Delaware, 438 U.S. 154, 171, 98 (1978). If "incorrect information is contained in an affidavit that is used to obtain a warrant, the trial court may hold a so-called Franks hearing to determine whether evidence obtained with the warrant should be excluded at trial." United States v. O'Neal, 17 F.4th 236, 244 (1st Cir. 2021). A Franks hearing is only warranted, however, "should the defendant make '"a substantial preliminary showing" that: 1) the warrant affidavit contains a false statement made "knowingly and intentionally, or with reckless disregard for the truth" and 2) . . . "the allegedly false statement was necessary to the finding of probable cause."'" United States v. Pérez-Greaux, 83 F.4th 1, 32 (1st Cir. 2023) (quoting United States v. Hicks, 575 F.3d 130, 138 (1st Cir. 2009)).

   **B.   Application**

Smith argues that it was a "blatant omission" to fail to state that he was the leaseholder of the Harrison apartment, and that

8

Riley had reported other addresses over the years-long investigation.[2] However, as just stated, the affidavit presented multiple sources of evidence linking Riley to the Harrison apartment. In light of the strength of the evidence, the fact that the lease was Smith's name or that Riley may have stayed elsewhere at various points does not negate probable cause.

Smith next contends that that the affidavit should have disclosed Riley's acquittal on two of the offenses it referenced. However, the affidavit provided an extensive account of Riley's criminal history, and while some charges resulted in acquittals, the remaining charges are sufficient to support a finding of probable cause. See United States v. Simpkins, 978 F.3d 1, 7 (1st Cir. 2020) ("A finding of probable cause does not demand proof beyond a reasonable doubt.").

Finally, Smith argues that Detective Ball's affidavit gives "the false impression that [Riley's] alleged RICO conspiracy crimes were 'recent' and in furtherance of the RICO conspiracy," when they were instead committed for "Riley's personal benefit." Dkt. 53 at 7-8. Detective Ball's affidavit outlines various reasons to believe that Riley is connected to the Heath Street Gang, and that his past and recent criminal history was in furtherance of

---

[2] Smith contends that Detective Ball knew Riley resided elsewhere; however, he provides no affidavit or other evidence to support that claim.

9

the Gang's criminal activity. Specifically, Detective Ball states that Riley has multiple Heath Street Gang tattoos and associates with other Heath Street Gang members. Riley also admitted to Boston Police Department Officers that he is a Heath Street Gang member during his October 2023 arrest and confirmed with those officers that he worked for "Married 2 the Mop," which he identified as operated by a Heath Street Gang member. Smith's argument that "upon information and belief, [Riley] was not a principle or accessory to any of [Married to the Mop's] criminal activity," is "as much [a] matter[] of opinion as [a] matter[] of fact, and [Smith] has made no convincing showing that [Detective Ball] knew the statement[] w[as] false, yet nonetheless included [it] in his affidavit[]." United States v. Gordon, 871 F.3d 35, 51 (1st Cir. 2017).

## ORDER

For the foregoing reasons, Smith's motion to suppress (Dkt. 49) and his motion for a Franks Hearing (Dkt. 53) are **DENIED**.


SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge